# United States Court of Appeals for the Federal Circuit

---

**ASHFORD UNIVERSITY, LLC,**
*Petitioner*

**v.**

**SECRETARY OF VETERANS AFFAIRS,**
*Respondent*

---

2018-1213

---

Petition for review pursuant to 38 U.S.C. Section 502.

---

Decided: March 3, 2020

---

KWAKU AKOWUAH, Sidley Austin LLP, Washington, DC, argued for petitioner. Also represented by CARTER GLASGOW PHILLIPS, DANIEL HAY, TOBIAS SAMUEL LOSS-EATON; GERARD D. KELLY, Chicago, IL.

WILLIAM JAMES GRIMALDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by JOSEPH H. HUNT, MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR.; Y. KEN LEE, BRYAN THOMPSON, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before NEWMAN, DYK, and CHEN, *Circuit Judges.*

DYK, *Circuit Judge.*

The Department of Veterans Affairs ("VA") provides educational assistance in the form of monetary benefits to veterans enrolled in "approved" "course[s] of education." *See* 38 U.S.C. § 3483. Typically, approval must be provided by "the State approving agency [("SAA")] for the State where [an] educational institution is located." 38 U.S.C. § 3672(a)(1). For online courses, the educational institution must obtain approval from the SAA where the institution's "main campus" is located. 38 C.F.R. § 21.4250(a)(3). The VA is authorized to suspend and discontinue educational assistance, after following certain procedures, if this requirement is not met. *See* 38 U.S.C. § 3690(b).

Petitioner Ashford University, LLC ("Ashford") is a for-profit educational institution that provides online courses to veterans and other students. In November 2017, the VA sent a letter ("Cure Letter") to Ashford stating that Ashford's online courses were not approved by the correct SAA. *See* 38 C.F.R. § 21.4250(a)(3). The VA expressed its "inten[t] to suspend payment of educational assistance and suspend approval of new enrollments and reenrollments [for Ashford's online programs] in 60 days unless corrective action is taken." J.A. 1. The Cure Letter provided that, absent corrective action, the VA would invoke procedures for discontinuing Ashford's educational assistance, including "refer[ring] the matter to the Committee on Educational Allowances . . . to assist . . . in making a determination as to whether educational assistance should be discontinued" and providing Ashford with "the opportunity for a hearing before the Committee." J.A. 3 (citing 38 C.F.R. §§ 21.4210–14).

Ashford petitions this court for review, contending that the Cure Letter "announces" new "rules" and that 38 U.S.C. § 502 provides this court with jurisdiction to review those alleged rules. Appellant's Br. 19, 48. On the merits,

Ashford argues that these alleged rules are invalid, and requests that this court "hold unlawful and set aside" the rules. *Id.* at 52.

We conclude that the Cure Letter is not rulemaking or any other action reviewable under section 502. The Cure Letter is also not subject to judicial review because it is not a final agency action under the Administrative Procedure Act ("APA"). We accordingly dismiss the petition.

BACKGROUND

I

A

As part of the modern GI Bill, the VA provides educational assistance in the form monetary benefits to veterans enrolled in "approved" "course[s] of education." *See* 38 U.S.C. § 3483. Pursuant to this statute, the VA makes tuition payments directly to educational institutions on behalf of enrolled veterans. *See* 38 U.S.C. § 3313; 38 C.F.R. §§ 21.9505, 21.9620.

For veterans to be eligible to receive payment assistance for a course of study, the course must be approved by "the State approving agency for the State where such educational institution is located." 38 U.S.C. § 3672(a)(1).[1] Section 3672(a)(1) is implemented for various kinds of courses in 38 C.F.R. § 21.4250. That section provides in relevant part that "[i]f an educational institution offers a course by independent study or by correspondence, <u>only</u> the [SAA] for the State where the educational institution's

---

[1]    The statute provides that SAA approval is unnecessary in certain circumstances, such as where the Secretary of the VA provides approval. *See* 38 U.S.C. § 3672. Ashford does not contend that those circumstances are present here.

main campus is located may approve the course for VA training."[2]    38 C.F.R § 21.4250(a)(3) (emphasis added). Section 21.4250 does not expressly define the term "main campus." However, "main campus" is defined in 38 C.F.R. § 21.4266, which pertains to the approval of courses at a "branch campus" or "extension." That section provides:

> (a) Definitions.  The following definitions apply to the terms used in this section.
>
>> . . .
>>
>> (3) Main campus means the location where the primary teaching facilities of an educational institution are located.  If an educational institution has only one teaching location, that location is its main campus. If it is unclear which of the educational institution's teaching facilities is primary, the main campus is the location of the primary office of its Chief Executive Officer.

38 C.F.R. § 21.4266(a).

## B

If an educational institution has not secured the required approval, the VA has statutory authority to "suspend educational assistance to" veterans after following specified procedures.  38 U.S.C. § 3690.  The statute provides in relevant part that:

> The [VA] may suspend educational assistance to eligible veterans . . . in any course as to which the [VA] has evidence showing a substantial pattern of

---

[2]    Educational institutions offering "resident" courses (e.g., where "study [is] at a site or campus of a college or university") are subject to different approval requirements. 38 C.F.R. § 21.4200(r).

> eligible veterans . . .  who are receiving such assis-
> tance by virtue of their enrollment in such course
> but who are not entitled to such assistance because
> (i) the course approval requirements of this chapter
> are not being met . . . .

*Id.* § 3690(b)(3)(A) (emphasis added).  Such a suspension
may only be taken, however, after:

> (i) the [VA] provides to the [SAA] concerned and the
> educational institution concerned written notice of
> any such failure to meet such approval require-
> ments . . .; [and]

> (ii) such institution refuses to take corrective action
> or does not within 60 days after such notice (or
> within such longer period as the Secretary deter-
> mines is reasonable and appropriate) take correc-
> tive action . . . .

*Id.* § 3690(b)(3)(B) (emphasis added).  The statute also pro-
vides that the Secretary of the VA may discontinue benefits
"if the Secretary finds that the . . . course in which the vet-
eran . . . is enrolled fails to meet any of the [statutory] re-
quirements."  *Id.* § 3690(b)(1).  These provisions are
implemented in regulations, described below, that specify
required procedures for suspending and discontinuing ed-
ucational assistance payments.

## II

Ashford is a for-profit educational institution that of-
fers only online courses.  Ashford was formerly known as
The Franciscan University ("Franciscan").  Franciscan
taught classes at its headquarters in Clinton, Iowa.  In
2005, Franciscan was acquired by its current owner,
Bridgepoint Education, Inc., and renamed Ashford Univer-
sity.

In 2013, Ashford moved its headquarters from Iowa to
San Diego, California.  Ashford lists its San Diego address

as its "Corporate" address, and Ashford's CEO's office appears to be at that address.  In 2015, Ashford announced that it would be closing its Clinton, Iowa campus and instead offering all of its classes online.

Ashford maintains an Administrative Online Student Services Center in Phoenix, Arizona, where a Financial Services Director, several financial services managers, and other financial employees work.  There is nothing in the record to suggest that the Arizona location employs Ashford professors or other teaching staff, or includes facilities for making online courses available.

From 2005 to 2016, Ashford's online courses had been approved by the Iowa SAA.  However, in 2016, the Iowa SAA indicated that it would no longer grant Ashford approval because Ashford had closed its Iowa campus and moved to solely online courses.  Ashford challenged the Iowa SAA's determination, and the lawsuit appears to be pending.[3]  At the urging of the VA, in June 2016, Ashford sought approval from the SAA in California, where Ashford's headquarters are located.  However, after the California SAA requested additional information from Ashford, Ashford withdrew its application from the California SAA and then applied to the Arizona SAA for approval, which Arizona granted effective July 10, 2017.

On November 9, 2017, the Director of the VA's Muskogee Regional Office, C. Jason McClellan, sent a letter ("Cure Letter") to Ashford regarding the requirement that Ashford have SAA approval.  The Cure Letter asserted that Ashford was not in compliance with 38 U.S.C. § 3672(a)(1) because it had not secured approval of the SAA where

---

[3]     The Iowa SAA agreed to leave Ashford's approval in place pending the outcome of this litigation.  *Ashford University, LLC v. Iowa Dept. of Educ.*, 2017 WL 3386541 (Iowa Dist. July 17, 2017) ("Ashford I"), at *2.

Ashford "is located." J.A. 1. The Cure Letter noted the requirement in 38 C.F.R. § 21.4250(a)(3) that an institution must obtain approval from the SAA where the institution's "main campus" is located. The Cure Letter discussed evidence "suggesting that [Ashford's] main campus would be in San Diego, CA," and apparently contemplated that Ashford must secure approval from the California SAA. J.A. 2. The Cure Letter noted the Arizona SAA's approval of Ashford but—relying on the definition of "main campus" from 38 C.F.R. § 21.4266—reasoned that because Ashford "does not appear to [have] any teaching location in Phoenix, AZ" and there is "no evidence that [Ashford's] CEO's primary office" is in Arizona, "the Arizona SAA lacks jurisdiction" to approve Ashford. J.A. 1–2. The Cure Letter stated that absent corrective action, Director McClellan would "suspend payment of educational assistance and suspend approval of new enrollments and reenrollments for [Ashford's] online programs" and "refer the matter to the Committee on Educational Allowances to assist [him] in making a determination as to whether educational assistance should be discontinued." J.A. 3 (citing 38 C.F.R. §§ 21.4210–12). The Cure Letter stated that "Ashford will be provided with the opportunity for a hearing before the Committee" prior to his determination. J.A. 3 (citing 38 C.F.R. §§ 21.4212–14). The VA agreed to stay the suspension of educational assistance payments to Ashford pending the outcome of this case.[4]

---

[4]    Ashford asserts that, after Ashford's 2016 application, "[o]fficials of the California SAA . . . said (without providing further explanation) that agency would 'never' approve Ashford." Appellant's Br. 17. Thereafter, Ashford applied again for approval by the California SAA, and the application was received by the California SAA on November 20, 2018. On December 14, 2018, the California SAA

Shortly thereafter, on November 17, 2017, Ashford petitioned this court for review of the Cure Letter. Ashford contends that this court has jurisdiction under 38 U.S.C. § 502 to review two erroneous "legal interpretations" "announced" in the Cure Letter. Appellant's Br. 2. To Ashford, the "VA's first new interpretation contends that the VA has authority to review and to nullify approval determinations made by [SAA's]." *Id.* Ashford argued that this interpretation runs afoul of a statute, 38 U.S.C. § 3682, barring the VA from exercising "supervision or control" over an SAA.

To Ashford, the "second new interpretation effectively revises the text of [the] VA's existing regulations" pertaining to the definition of "main campus." Appellant's Br. 2–3. In particular, Ashford argues that the VA's interpretation improperly imported the meaning of "main campus" from 38 C.F.R. § 21.4266—a section pertaining to "approval of courses at a branch campus or extension"—into 38 C.F.R. § 21.4250, which requires "courses . . . by correspondence" to be approved by the SAA where the "main campus" is located. To Ashford, this interpretation was substantive rulemaking without the required notice-and-comment procedures and represented a change in position for which the VA was required to—but failed to—provide adequate justification.

DISCUSSION

I

A

Ashford has the burden of establishing this court's jurisdiction over its petition. *See Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 859 F.3d 1072, 1077 (Fed. Cir.

responded, expressing its "I[ntention] N[ot] T[o] A[ct]" on Ashford's application. J.A. 1322.

2017).  Ashford contends that we have jurisdiction under
38 U.S.C. § 502.  Section 502 provides that:

> An action of the Secretary [of the VA] to which sec-
> tion 552(a)(1) or 553 of title 5 (or both) refers is sub-
> ject to judicial review.  Such review shall be in
> accordance with chapter 7 of title 5 and may be
> sought only in the United States Court of Appeals
> for the Federal Circuit.

Title 5, section 552(a)(1) refers in relevant part to "substan-
tive rules of general applicability adopted as authorized by
law," and "statements of general policy or interpretations
of general applicability formulated and adopted by the
agency" (i.e., interpretive rules).  Rules and statements un-
der section 552(a)(1) must be published in the Federal Reg-
ister.    Title 5, section 553 requires that notice-and-
comment procedures be followed for "rule making."

The Administrative Procedure Act ("APA") draws a dis-
tinction between "rules" and "adjudications."  A "rule" is
defined in relevant part as "the whole or a part of an agency
statement of general or particular applicability and future
effect designed to implement, interpret, or prescribe law or
policy." 5 U.S.C. § 551(4).  An "adjudication," on the other
hand, is defined as "agency process for the formulation of
an order," where an "order" is "the whole or a part of a final
disposition, whether affirmative, negative, injunctive, or
declaratory in form, of an agency in a matter other than
rule making but including licensing." 5 U.S.C. §§ 551(6)–
(7).  The Supreme Court has described rules as "general-
ized standard[s]" and adjudications as "individual" and
"case-by-case" determinations. *NLRB v. Bell Aerospace Co.
Div. of Textron*, 416 U.S. 267, 293 (1974).

Adjudications are not subject to section 502 review.
Whereas section 502 provides this court with jurisdiction
to review VA actions "to which section 552(a)(1) . . . refers,"
a different subsection—552(a)(2)—refers to "orders[] made
in the adjudication of cases," 5 U.S.C § 552 (emphasis

added).  Section 502 thus provides jurisdiction "to review substantive and interpretive rules, but not orders."  *Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affairs*, 464 F.3d 1306, 1316 (Fed. Cir. 2006).  "Adjudications, which are governed by 5 U.S.C. [§ 554], are not covered by the judicial review provisions of [section 502]."  *Hilario v. Sec'y, Dep't of Veterans Affairs*, 937 F.2d 586, 588 (Fed. Cir. 1991) (interpreting an earlier version of the statute).  It follows that agency actions that are part of the "process for the formulation of an order," 5 U.S.C. § 551(7)—i.e., actions that constitute an "adjudication"—are not subject to section 502 review.

The Cure Letter is part of an adjudication.  The Letter is individualized: it addresses Ashford's specific situation at length, including various evidentiary facts relating to the location of Ashford's CEO and Ashford's teaching facilities.  And the Letter's core assertion—that Ashford does not have the required SAA approval—does not apply to any entity other than Ashford.  The situation here is thus different from cases like *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1017–18 (D.C. Cir. 2000), and *Coal. for Common Sense*, 464 F.3d at 1317, in which the agency promulgated a generalized guidance document or letter not specific to any entity.  Instead, the Cure Letter applies existing regulations (namely, 38 C.F.R. §§ 21.4250 and 21.4266) to Ashford's current situation.  The Letter even states that if Ashford "makes changes to its existing structure," information pertaining to those changes "may resolve this issue."  J.A. 3.  These characteristics are hallmarks of an adjudication.  *See United States v. Fla. E. Coast Ry. Co.*, 410 U.S. 224, 244–46 (1973) (recognizing a "distinction in administrative law between proceedings for the purpose of promulgating policy-type rules or standards, on the one hand, and proceedings designed to adjudicate disputed facts in particular cases on the other"); *see also* Wright & Miller, 32 Fed. Prac. & Proc. Judicial Review § 8122 (2019)

("[A]djudication is the decisionmaking process for applying preexisting standards to individual circumstances.").

Ashford contends that even if the Cure Letter were part of an adjudication, it is nevertheless reviewable because it "produces an agency statement that 'fits within the APA's definition of "rule."'" Reply Br. 9-10 (quoting *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1284–85 (D.C. Cir. 2005)). In particular, Ashford contends that the Cure Letter "announced" two "new legal interpretation[s]." Appellant's Br. 2. But even if we were to accept Ashford's characterization of the Cure Letter as "announc[ing]" these "interpretations," this would still fail to provide us with section 502 jurisdiction. As the Supreme Court explained in *Bell Aerospace*, 416 U.S. at 294:

> The views expressed in [*SEC v. Chenery Corp.*, 332 U.S. 194 (1947)] and [*NLRB v. Wyman-Gordon Co.*, 394 U.S. 759 (1969)] make plain that [an agency] <u>is not precluded from announcing new principles in an adjudicative proceeding</u> and that the choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion.

Ashford's challenge to the Cure Letter's "announc[ing]" of "new interpretation[s]" is, in essence, a challenge to the "announcing [of] new principles" that *Bell Aerospace* permits an agency to do in an adjudication. *See id.*

To be sure, courts have identified exceptions to the general principle that an adjudication does not announce rules or statements of general policy. But none of these exceptions applies here. For example, in *Wyman-Gordon*, 394 U.S. at 764, the Court found that a "rule" was announced in an adjudication because it was entirely forward-looking—i.e., not binding on the parties to the adjudication but instead only binding on non-parties. The Cure Letter, by contrast, solely addresses the party to this adjudication: Ashford.

Our decision in *Snyder v. Sec'y of Veterans Affairs*, 858 F.3d 1410 (Fed. Cir. 2017) is also inapposite. There, a deceased veteran's widow seeking accrued benefits challenged an award of fees to the veteran's former attorney. *Id.* at 1411–12. The Regional Officer ("RO") held that the death of the veteran precluded the widow's challenge, and the widow appealed this determination to the Board of Veterans' Appeals. *Id.* The Board requested an opinion from the VA's General Counsel. *Id.* at 1412. The General Counsel issued a precedential opinion, published in the Federal Register, stating in relevant part that: "A claim, pending at the time of a veteran's death, challenging an attorney's entitlement to payment of attorney fees . . . may provide a basis for an accrued benefits claim." *Id.* The attorney challenged this opinion in this court. *Id.*

We held that section 502 provided us with jurisdiction over the attorney's challenge because the General Counsel's opinion was a "rule"; it was framed entirely in general terms (not specific to the adjudication from which it arose) and promulgated in a form (a precedential VA General Counsel opinion) that VA regulations expressly make "subject to the provisions of § 552(a)(1)." *Id.* at 1413; *see* 38 C.F.R. § 14.507. Neither of these circumstances is present here. "Though general policy considerations may influence the [VA's] decision, the decision will not make general policy. Only [Ashford's] rights . . . will be affected."[5]  *See*

---

[5]   For this reason, this case does not involve the unresolved question of when a policy statement is reviewable under section 502. The Supreme Court granted certiorari on this question but later dismissed the case when it became moot. *Gray v. Sec'y of Veterans Affairs*, 875 F.3d 1102 (Fed. Cir. 2017), *cert. granted, judgment vacated sub nom. Blue Water Navy Vietnam Veterans Ass'n, Inc. v. Wilkie*, 139 S. Ct. 2740 (2019), and *vacated and remanded sub*

*Seacoast Anti-Pollution League v. Costle*, 572 F.2d 872, 876 (1st Cir. 1978). Ashford has identified no authority for the proposition that the situation here—an agency's enforcement of pre-existing law in an action against a specific entity—creates a substantive rule, interpretive rule, or statement of general policy.

Because the Cure Letter does not announce a rule or policy statement, section 502 does not provide this court with jurisdiction over Ashford's petition.

B

Ashford contends that aside from a section 502 petition, which we have now foreclosed, it has no path to judicial review of a VA decision to suspend or discontinue educational assistance payments because Section 511(a) precludes judicial review. Thus, to Ashford, a lack of 502 jurisdiction here "would improperly insulate agency lawmaking from review." Reply Br. 18.

There is a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). If review were unavailable outside section 502, the presumption of reviewability might justify a different reading of section 502. As the Supreme Court noted in *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131 (2016), the presumption applies "when [courts] interpret statutes, including statutes that may limit or preclude review." *Id.* at 2140. But, contrary to Ashford's argument, judicial review of the VA's adjudicatory decision is available.

Title 38, section 511(a) limits judicial review of a "decision by the Secretary under a law that affects the provision of benefits." It provides in relevant part that:

---

*nom. Gray v. Wilkie*, 139 S. Ct. 2764 (2019), and *vacated*, 774 F. App'x 678 (Fed. Cir. 2019).

> The Secretary shall decide all questions of law and
> fact necessary to a decision by the Secretary <u>under
> a law that affects the provision of benefits by the
> Secretary to veterans</u> or the dependents or survi-
> vors of veterans.  Subject to subsection (b), the de-
> cision of the Secretary as to any such question shall
> be final and conclusive and may not be reviewed by
> any other official or by any court, whether by an
> action in the nature of mandamus or otherwise.

35 U.S.C. § 511(a) (emphasis added).  But section 511 in-
cludes exceptions providing:

> (b) The second sentence of subsection (a) <u>does not
> apply to</u>—

> > (1) <u>matters subject to section 502 of this ti-
> > tle</u>;

> > . . .

> > (4) <u>matters covered by chapter 72 of this ti-
> > tle</u>[, which provides for review in this court
> > of decisions by the Court of Appeals for Vet-
> > erans Claims ("Veterans Court")].

*Id.* § 511(b) (emphasis added).

Section 511 thus provides only two potential paths for
judicial review of a discontinuance "decision by the Secre-
tary": (1) directly in this court for matters subject to section
502 (which, as we have concluded, Ashford's challenge is
not), 38 U.S.C. § 511(b)(1); and (2) a review of a decision of
the Veterans Court, *id.* §§ 511(b)(4), 7292.

The second path of review involves both the Board of
Veterans' Appeals ("Board") and the Veterans Court.  Sec-
tion 511(a)'s general preclusion language—that "the deci-
sion of the Secretary [of the VA] . . . may not be reviewed
. . . by any court"—merely channels review of these "deci-
sion[s]" through the Board and the Veterans Court.  *See
Blue Water Navy Vietnam Veterans Ass'n, Inc. v.*

*McDonald*, 830 F.3d 570, 573 (D.C. Cir. 2016) (holding that section 511(a) divests district courts of jurisdiction over APA challenges to "decision[s] of the Secretary"). The legislative history of section 511 is consistent with this understanding: Congress found a "specialized review process" desirable "both because it avoided overburdening the district court system [with APA review] and because the district courts lacked the necessary expertise" for review. *Bates v. Nicholson*, 398 F.3d 1355, 1364 (Fed. Cir. 2005).

We conclude that the system of Board review is applicable to the VA's actions in question. The Veterans Court has "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals." 38 U.S.C. § 7252.[6] And the Board has jurisdiction to review "[a]ll questions in a matter which under section 511(a) of this title is subject to decision by the Secretary [of the VA]." 38 U.S.C. § 7104(a). Section 7104(a) is implemented by 38 C.F.R. § 20.104(a), which provides in relevant part that:

> All questions of law and fact necessary to a decision by the Secretary of Veterans Affairs under a law that affects the provision of benefits by the Secretary to veterans or their dependents or survivors <u>are subject to review</u> on appeal to the Secretary. Decisions in such appeals are made by the Board of Veterans' Appeals. Examples of the issues over which the Board has jurisdiction include, but are not limited to, the following:
>
> . . .

---

[6] For example, the Veterans Court is authorized to: "hold unlawful and set aside decisions . . . issued or adopted by . . . the Board of Veterans' Appeals . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261.

> (8) Veterans' Educational Assistance (38 U.S.C. chapter 34).

(emphasis added).  The benefits provided here are "Veterans' Educational Assistance" under chapter 34.  Accordingly, Ashford may appeal "a decision of the Secretary" on suspension or discontinuance of benefits to the Board, the Board's decision to the Veterans Court, and the Veterans Court's decision to this court.

Ashford appears to agree that a veteran denied educational assistance could seek review through the Board process.  But Ashford contends that the Board would lack jurisdiction over any appeal from Ashford, stating that it is "unaware . . . of any instance in which the Board has entertained an appeal brought by anyone other than a beneficiary [i.e., a veteran] or representative of a beneficiary." Ashford Supp. Br. 4 n.1.  However, our decision in *Bates* is to the contrary.

In *Bates*, we held that an attorney's challenge to the VA's cancellation of his accreditation was a "decision . . . under a law that affects the provision of benefits . . . to veterans or the dependents or survivors of veterans" and so must be heard by the Board.  398 F.3d at 1359, 1362 (quoting 38 U.S.C. § 551(a)).  We explained that although attorney accreditation did not, in itself, "affect[] the provision of benefits," the word "law" in the statute meant a "single statutory enactment bearing a Public Law number." *Id.* at 1361.  Since the Public Law that included the VA attorney accreditation provisions (the Veterans Act of 1936) also included other provisions that affected the provision of benefits, the plaintiff's challenge met Section 511's "under a law" clause.  *Id.* at 1362.

Here, the discontinuance of funding to Ashford is under a statutory section and subsection—38 U.S.C. § 3690(b)—that <u>itself</u> "affects the provision of benefits . . . to veterans"; the subsection provides that "[t]he Secretary [of the VA] may discontinue the <u>educational assistance allowance</u> of

any eligible <u>veteran</u>."    *See id.* § 3690(b)(1) (emphasis added).  Moreover, section 3690 was enacted as part of a Public Law (the Vietnam Era Veterans' Readjustment Assistance Act of 1972, Pub. L. No. 92-540 § 1790, 86 Stat. 1074, 1088) that broadly affects the provision of benefits to veterans.  Therefore, like the attorney in *Bates*, Ashford is within section 511(a)'s "provision of benefits" language and can appeal to the Board upon a "decision of the Secretary."

Ashford nonetheless contends that the Board would lack jurisdiction over an appeal by Ashford because Ashford is not a natural person.  Ashford notes 38 U.S.C. § 7105(b)(2)(A), providing that review at the Board is to be initiated by a "claimant," and 38 U.S.C. § 5100, defining a "claimant" as an "individual applying for, or submitting a claim for, any benefit under the laws administered by the Secretary."  Ashford contends that the word "'individual' ordinarily means '[a] human being,'" and therefore Ashford would not be a "claimant" that may initiate Board review.  Ashford Supp. Br. 2 (quoting *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 454 (2012) (quoting 7 Oxford English Dictionary 880 (2d ed. 1989)) (alteration in original))).  But the word "individual," when read in the context of a statutory scheme, can include both natural persons and other entities.  Thus, for example, *Clinton v. City of New York*, 524 U.S. 417, 428 (1998) held that "in the context of the [relevant statutory] section[,] Congress undoubtedly intended the word 'individual' to be construed as synonymous with the word 'person'" (i.e., including both "natural persons" and other entities).  The Supreme Court decision upon which Ashford relies, *Mohamad*, is not to the contrary.  While it concluded that an "individual" is normally a natural person, citing *Clinton*, it stated that "the word 'individual' [does not] invariably mean[] 'natural person' when used in a statute.  Congress remains free, as always, to give the word a broader or different meaning."  *Mohamad*, 566 U.S. at 455.

Here, construing "claimant" to only include "individual[s]" that are "natural person[s]" would prevent any entity other than an individual veteran from challenging any "decision of the Secretary" denying benefits. *See* 38 U.S.C. § 511(a). We do not think Congress intended such a result, which would be contrary to the presumption of judicial review.

This result is also supported by the design of the statutory scheme. Congress clearly provided that veterans denied educational benefits could and should resort to the Board appeals process. 38 U.S.C. § 7104(a). Congress could not have intended that veterans denied educational assistance benefits secure relief through the Board process but deny such review to educational institutions that receive such benefits on the veterans' behalf. To be sure, the Board process has often been slow to process claims. *See Monk v. Shulkin*, 855 F.3d 1312, 1317–18 (Fed. Cir. 2017). But we are confident that—because of the large number of veterans affected and the need for prompt resolution in view of the effect of a discontinuance on the conduct of both veterans and educational institutions—the Board will process such complaints expeditiously. Thus, we read "claimant" in 38 U.S.C. § 7105(b)(2)(A) to include legal entities like Ashford.[7]

In summary, we conclude that while neither APA nor section 502 review is available with respect to the agency

---

[7]    For similar reasons, we find unavailing Ashford's reliance on certain implementing regulations and forms that presuppose that only a veteran may appeal to the Board. *See* Ashford Supp. Br. 3 (noting form that "requires submission of the 'veteran's name,' 'veteran's social security number,' 'veteran's VA file number,' and 'veteran's date of birth'").

action challenged here, the action may be reviewable pursuant to section 511(b)(4).

## II

Even if we otherwise had section 502 jurisdiction, we conclude that Ashford's petition would be proper only if it challenged a final agency action. Ashford argues that the Cure Letter should be treated as final "because it commands immediate compliance from Ashford on pain of sanction." Ashford Supp. Br. 8. But we disagree. The Cure Letter was not a final agency action.

## A

We first consider whether section 502 includes a finality requirement. Section 502 itself is silent on finality, but section 502 states that Federal Circuit review "shall be in accordance with chapter 7 of title 5." That chapter, in turn, provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

On its face, section 704 does not provide that "agency action made reviewable by statute" must be final. But even before the enactment of the APA in 1946, the Supreme Court recognized that a finality requirement is inherent in agency judicial review provisions generally. For example, in *Federal Power Commission v. Metropolitan Edison Co.*, 304 U.S. 375 (1938), the Court construed a review statute to require final agency action, though the statutory text was silent, because a contrary "construction, affording opportunity for constant delays in the course of the administrative proceeding for the purpose of reviewing mere procedural requirements or interlocutory directions, would do violence to the manifest purpose of the [review] provision." *Id.* at 383–84. More recently, in *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), the Court recognized that "[e]xcept where Congress explicitly provides for

our correction of the administrative process at a higher level of generality, [courts] intervene in the administration of the laws only when, and to the extent that, a specific 'final agency action' has an actual or immediately threatened effect." *Id.* at 894 (emphasis added) (citing *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164–66 (1967)).

The legislative history of section 704 supports reading the APA itself as requiring finality.  This history "reveals that Congress intended to codify existing law on judicial review of agency actions," which "included a court-imposed finality requirement as a prerequisite for judicial review." *Carter/Mondale Presidential Comm., Inc. v. Fed. Election Comm'n*, 711 F.2d 279, 285 n.9 (D.C. Cir. 1983).  "[T]he Senate Judiciary Committee explained that one purpose of § 704 was 'to negative any intention to make reviewable merely preliminary or procedural orders where there is a subsequent and adequate remedy at law available, as is presently the rule.'" *Id.* (quoting Senate Judiciary Comm., Committee Print on the Administrative Procedure Act 27 (1945), Administrative Procedure Act: Legislative History 37 (1946) (citations omitted)); *see also* Attorney General's Manual on the Administrative Procedure Act 101, 102 (1947) ("[M]any regulatory statutes, either expressly or <u>as they are interpreted</u>, have provided for review of (and only of) 'final' agency orders, with the result that the judicial construction of such provisions will carry over . . . ." (emphasis added)).  Thus, we agree with the D.C. Circuit that "[w]hile only the second category [in § 704] contains a reference to finality, . . . Congress also assumed that '[a]gency action made reviewable by statute' would be final action." *Carter/Mondale*, 771 F.2d at 285 n.9. (third alteration in original).  It would indeed be anomalous to require finality for district court decisions but to hold that non-final agency

actions are subject to judicial review.[8]  We conclude that section 502, by incorporating 5 U.S.C. § 704, includes a finality requirement.

B

Ashford contends that even if there were a finality requirement, it is not jurisdictional, and that the government waived the defense by failing to raise it in its briefing.  Ashford notes that the government included a footnote in its brief asserting that "no final agency action has occurred in this matter rendering any section 511(a) challenge unripe," Appellee's Br. 35 n.2, but contends that this assertion is not sufficient to preserve the section 502 finality issue.

We need not decide in this case whether finality under section 704 is jurisdictional or whether the argument was sufficiently presented in the government's briefing.  Even if the finality requirement were non-jurisdictional, the requirement may be—and, here, should be—enforced.  In general, "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976); *see also Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1345 (Fed. Cir. 2001). And there are compelling reasons for Circuit courts to enforce the finality requirement in agency cases regardless of waiver.  For example, in *Automated Merchandizing Systems, Inc. v. Lee*, 782 F.3d 1376 (Fed. Cir. 2015), we considered whether the challenged agency action was final—even though the finality issue was not raised in the district court—where the lack of finality was "clear[]," and the

---

8    *But see Iowa League of Cities v. EPA*, 711 F.3d 844, 863 n.12 (8th Cir. 2013) (stating that "[t]he word 'final' [in section 704] modifies the second use of 'agency action,' but not the first").

finality issue was "immediately reviewable" and "present[ed] a significant question of continuing public concern." *Id.* at 1379–81.

We find the circumstances of this case justify enforcement of the requirement of finality. There are no disputed factual issues, so the finality issue may be resolved purely as a question of law. As we discuss below, that the Cure Letter is not a final agency action is beyond any doubt. Ashford petitions directly to this court, so the finality issue could not have been raised at any lower tribunal. Ashford had an opportunity to address and did address the issue at oral argument and in supplemental briefing. And, most importantly, the courts have a strong institutional interest in enforcing the finality requirement in the agency context.

The finality requirement "serves the important purpose of promoting efficient judicial administration," *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981), and "serves to avoid 'unnecessary piecemeal appellate review without precluding later appellate review of the legal issue or any other determination made on a complete administrative record,'" *Williams v. Principi*, 275 F.3d 1361, 1364 (Fed. Cir. 2002) (quoting *Cabot Corp. v. United States*, 788 F.2d 1539, 1543 (Fed. Cir. 1986)). Premature review of agency actions, by contrast, "afford[s] opportunity for constant delays in the course of the administrative proceeding for the purpose of reviewing mere procedural requirements or interlocutory directions, [and] would do violence to the manifest purpose of the [review] provision." *Fed. Power*, 304 U.S. at 383–84; *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967), *overruled on other grounds by Califano*, 430 U.S. at 105. In light of these circumstances, we will consider the finality issue notwithstanding any failure of the government to raise it.

C

For agency action to be "final," two conditions must be met: (1) "the action must mark the 'consummation' of the

agency's decisionmaking process"; and (2) "the action must
be one by which 'rights or obligations have been deter-
mined,' or from which 'legal consequences will flow.'" *Ben-
nett v. Spear*, 520 U.S. 154, 177–78 (1997) (first quoting
*Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S.
103, 113 (1948); and then quoting *Port of Bos. Marine Ter-
minal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S.
62, 71 (1970)).

The Cure Letter is neither the "consummation" of the
VA's decisionmaking process nor the "determin[ation]" of
"rights or obligations." We first address the "consumma-
tion" requirement. The Secretary of the VA has delegated
to each Director of a VA Regional Processing Office ("Re-
gional Director") the authority to discontinue payment of
educational benefits to educational institutions like Ash-
ford. *See* 38 C.F.R. § 21.4211(a)(6). But a Regional Direc-
tor may discontinue assistance payments to Ashford only
after certain procedures have been followed. *See generally*
38 C.F.R. §§ 21.4210–16. First, the Regional Director must
notify Ashford "of any failure to meet . . . approval require-
ments," and provide Ashford with at least 60 days to take
corrective action. *See* 38 C.F.R. § 21.4210(e)(1). The Cure
Letter appears to have satisfied this step, but the rules pro-
vide for further steps before discontinuance.

The Regional Director must refer the matter to the
Committee on Educational Allowances ("Committee") to
make a recommendation as to "whether educational assis-
tance . . . should be discontinued." 38 C.F.R
§ 21.4212(a)(5). Ashford has the right to a hearing before
the Committee, and to be represented by counsel. *See* 38
C.F.R. § 21.4212. The Regional Director must then con-
sider the Committee's recommendation in deciding
whether to discontinue payment of educational benefits to
Ashford. *See* 38 C.F.R. § 21.4215; 38 C.F.R.
§ 21.4211(a)(6). The VA has not taken final action on dis-
continuance at least until the Regional Director decides to

discontinue payment to Ashford.[9]  The Cure Letter itself recognizes that the Regional Director could not discontinue educational assistance until the Committee had made a recommendation and Ashford had an opportunity for a hearing before the Committee.  The supposed rules are thus subject to reconsideration by the Regional Director in the course of the discontinuance proceedings.

Ashford contends that the Regional Director's threat of suspension is immediately reviewable because it is enforced by the threat of suspension.  The Regional Director on his own can suspend benefits after the required notice, but he has not acted here to suspend benefits and there is no final decision as to suspension.  We need not now decide whether a decision to suspend could ever be reviewable as a final agency action separate from a discontinuance decision.  *See In re Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 756 (8th Cir. 2003) (holding that a "temporary closure order" closing an Indian tribe's

---

[9]    Moreover, after the Regional Director's decision on discontinuance, Ashford may optionally seek review by the Director, Education Services.  *See* 38 C.F.R. § 21.4216(a).  The Director, Education Services "has the authority to affirm, reverse, or remand the original decision," albeit in a proceeding that "will not be de novo in nature" and for which "no hearing . . . will be held."  38 C.F.R. § 21.4216.  Under the regulation, this is the decision, unless it is a remand, that "shall become the final Department decision" on the discontinuance of Ashford's benefits.  *See id.* (emphasis added).  We do not decide whether the VA's decision is not final until after this review occurs.  *See generally Darby v. Cisneros*, 509 U.S. 137, 147 (1993) (holding that the APA's judicial review statute "explicitly requires exhaustion of all intra-agency appeals mandated either by statute or by agency rule," but does not "require litigants to exhaust optional appeals as well").

casino was not a "final agency action"—"even though it may have an immediate effect on the [t]ribe's finances in the near term"—because the closure order was "on a temporary basis" pending further administrative review). As an "intermediate agency action," a suspension of benefits may be only "subject to review on the review of the <u>final</u> agency action": the discontinuance of educational benefits. *See* 5 U.S.C. § 704 (emphasis added).

Ashford also has not satisfied the second requirement: demonstrating that the challenged action—here, the threat of suspension—is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal quotation marks omitted). To be sure, the Regional Director in the Cure Letter has the authority to suspend benefits pending a final decision, *See* 38 C.F.R. § 21.4211(a)(6), and has threatened a suspension of benefits. But Ashford has not demonstrated any "day-to-day" hardship resulting from the VA's threat of suspension of payment of educational assistance. *See FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239 (1980). Any hardship resulting from the suspension of payments to Ashford does not justify relaxing the finality requirement here.

In sum, the Cure Letter is "merely tentative" and "interlocutory [in] nature." *See Bennett*, 520 U.S. at 178. At this stage, there has been no final agency action.

## CONCLUSION

We conclude that this case is not justiciable for two reasons. First, the Cure Letter is not an agency action reviewable under section 502. Second, the Cure Letter is not subject to review because it is not a final agency action. Accordingly, Ashford's petition is

## **DISMISSED**

26    ASHFORD UNIVERSITY, LLC v. SECRETARY OF VETERANS
AFFAIRS

COSTS

No costs.